# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

Aquanda Brooks,
Plaintiff,

v.

LSC Communications LLC.

Case No. 22-cv-6558

## COMPLAINT

Now comes Plaintiff, Aquanda Brooks ("Plaintiff"), through her attorneys, and complaining of the Defendant, LSC Communications LLC, states as follows:

### NATURE OF ACTION, JURISDICTION AND VENUE

1. The present action alleges claims based on violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.

2. This court has jurisdiction over the claims for relief alleged herein pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in this District.

### PARTIES

4. Plaintiff, an African American woman, with prior protected activity, was, at all relevant times, employed by Defendant in Warrenville, IL.

5. LSC Communications LLC is an employer, with over 15 full-time employees, that regularly does business in Illinois.

6. At all relevant times, Defendant was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964.

## PRIOR ADMINISTRATIVE PROCEEDINGS

7. Plaintiff exhausted all mandatory pre-complaint administrative procedures through the timely filing of a complaint of discrimination and retaliation with the Equal Opportunity Employment Commission, Charge No. 440-2021-04298.

8. This Complaint was filed within 90 days of Plaintiff's receipt of her notice of the right to sue.

## FACTS COMMON TO ALL COUNTS

9. Plaintiff began to work for Defendant in a "contract-to-hire" position in or about October 2018.

10. Before she was hired as a permanent employee, Defendant's employee and supervisor, Jerry Svejda (white male), the IT Manager, offered Plaintiff a permanent position as IT Governance Analyst 1, which carried a salary of $75,000.00.

11. Plaintiff's contract terms provided that Defendant would hire her as an IT Governance Analyst 2, with a salary of $100,000.00, and Plaintiff informed Svejda as much.

12. Meanwhile, Svejda had given the IT Governance Analyst 2 position to a Caucasian woman.

13. In or about July 2019, Defendant hired Plaintiff, as an IT Governance Analyst 3, as the level 2 position had been filled by Svejda with a white woman, while he was trying to convince Plaintiff to accept an IT Governance Analyst 1 position.

14. Plaintiff was the only African American on the IT Governance team, and the only individual with both Bachelor's and Master's degrees in Information Technology.

15. In November 2019, Plaintiff complained to Defendant that Svejda was sexually harassing her by getting extremely close to her and making sexual gestures.

16. Plaintiff informed Defendant that Svejda's sexual harassment made her uncomfortable and that she asked Svejda to cease his behavior, but he had not.

17. Defendant, through its employee, Regional HR Manager Kristen Goetz (white) interviewed Plaintiff's co-workers, who indicated that Svejda also invaded their, and other employees' "personal space," and that it made them uncomfortable.

18. Goetz only questioned Svejda about walking into other people's workspaces, which he falsely denied.

19. Defendant did not suspend or terminate Svejda for his conduct or for falsely claiming that he did not engage in the conduct about which multiple employees accused him.

20. Defendant did not remove Svejda as Plaintiff's supervisor.

21. Subsequently, in March 2020, Svejda rated Plaintiff a "3 – Proficient," for her 2019 performance appraisal, which was inconsistent with the quality of work provided by Plaintiff.

22. Plaintiff had not received any complaints about her performance before the rating period.

23. Plaintiff complained about the Svejda's rating, and Goetz scheduled a call with Svejda, and the Vice President of Information Technology Security, Karen Riley.

24. Goetz and Riley supported Svejda's rating.

25. In May 2020, Riley, who was not Plaintiff's direct supervisor, and who was aware of Plaintiff's complaints about Svejda, told Plaintiff she would need to track her daily

3

activities, and provide that information to Riley, even though Plaintiff was a salaried employee.

26. Plaintiff was the only salaried employee who was being required to justify her daily activities.

27. Feeling that she was being treated differently than her non-African American co-workers who had not lodged a complaint against their supervisor, Plaintiff again complained indicating that she felt her race and complaints about Svejda were the reason for Svejda and Riley's conduct.

28. Goetz met with Svejda and Riley who claimed Plaintiff had performance deficiencies, though she did not.

29. Defendant allowed Plaintiff's supervisors to continue to treat her differently than her non-African American co-workers who had not complained about Svejda or Riley.

30. On May 29, 2020, Riley and Svejda met with Plaintiff and they again accused her of performance deficiencies.

31. Plaintiff again complained, and Defendant assigned Regional HR Manager Ronald Jones, and African American male, to investigate, in an attempt to insulate Defendant from an appearance that Plaintiff was facing discrimination.

32. Plaintiff told Jones the problems she was having with her supervisors, but yet another of Defendant's HR employees, this time Jones, supported her supervisors.

33. Jones even went so far as to claim that Plaintiff's supervisors could not be retaliating against her as Svejda was not informed about who lodged the complaint against him in 2019.

34. Jones, and Defendant, ignored the fact that Plaintiff herself first complained about Svejda's behavior to Svejda himself, and only after he refused to stop, did Plaintiff complain to HR.

35. In July 2020, during a conference call with the Chief Information Officer, David Houck and Goetz, Plaintiff was told by Houck that if she was unhappy with the "culture" at LSC, she could resign and that was her "only" choice.

36. On September 14, 2020, Defendant notified staff that the company had entered into a purchase agreement under which an affiliate of Atlas Holdings (Atlas) would acquire LSC's operations.

37. Houck informed the IT team that their jobs were safe.

38. Throughout 2020 and 2021, Plaintiff's supervisors continued to interfere with the terms and conditions of Plaintiff's employment, including deleting attachments she provided to her self-assessments, subjecting her to heightened scrutiny, and otherwise treating her differently than her coworkers.

39. In January 2021, Plaintiff complained to Jones about her treatment, and notified him of her apprehension that Riley, whom she had lodged a complaint against, was going to conduct her performance appraisal.

40. Plaintiff also informed Jones that the attachments to her performance reviews, meant to substantiate her performance, had been deleted by someone for both 2019 and 2020.

41. On April 1, 2021, Riley and Goetz contacted Plaintiff and informed her that, contrary to assurances by the CIO, that day, to return her work items, and to clear out her desk.

42. Plaintiff was the only person on the IT Governance Team who was terminated.

43. After Plaintiff's termination no African Americans remained on Defendant's IT Governance Team.

## COUNT I
*(Retaliation under Title VII)*

44. Plaintiff re-alleges and re-asserts the allegations contained in preceding paragraphs as if fully set forth herein.

45. Plaintiff engaged in protected activity.

46. Defendant was aware of Plaintiff's protected activity.

47. Because of Plaintiff's protected activity, and Defendant's retaliatory animus, Defendant, through its employees, took actions against Plaintiff, including, but not limited to:

   a. Interfering with the terms and conditions of Plaintiff's employment;

   b. Downgrading or disparaging Plaintiff's performance;

   c. Subjecting Plaintiff to heighted scrutiny;

   d. Terminating Plaintiff.

48. Defendant treated individuals without protected activity more favorably.

49. Defendant's stated reason for its conduct is pretext for unlawful retaliation.

50. Defendant's actions could undoubtedly have a chilling effect on an employee's exercise of their rights.

51. Defendant's conduct was a knowing and willful violation of Plaintiff's rights.

52. As a proximate result of the acts and omissions on the part of Defendant, Plaintiff has suffered damage to her career, physical, psychological, and emotional injury, compensable damages, and other substantial and irreparable injury.

WHEREFORE, Plaintiff prays for relief and damages including the following:

a. Trial by jury on the allegations raised in this complaint and reasonably related to information provided to the EEOC;

b. That a declaratory judgment be issued that Plaintiff's rights have been violated as alleged above and that the practices complained of herein are unlawful and violative of the Acts cited;

c. That this Court permanently enjoin Defendant, its agents, successors, officers, employees, and those acting in concert with them, from engaging in each of the unlawful practices, polices, customs and usages set forth herein, and from continuing all other practices shown to be in violation of applicable law;

d. That Plaintiff recover from Defendant compensatory damages for emotional pain, suffering, physical injury, inconvenience, mental anguish and other non-wage losses and any other damages, including punitive, to which Plaintiff may be entitled under other applicable laws, rules, or regulations;

e. That Plaintiff be awarded the costs and disbursements of this action, including reasonable attorney's fees, pursuant to the Civil Rights Attorneys Fee Award Act of 1975, 42 U.S.C. §1988 and any other fee-shifting statutes; and

f. Such other and further relief as this Court deems just or appropriate under the circumstances.

## COUNT II
*(Discrimination in violation of Title VII)*

53. Plaintiff re-alleges and re-asserts the allegations contained in preceding paragraphs as if fully set forth herein.

54. Plaintiff is a woman.

55. The Defendant is aware of Plaintiff's sex.

56. Because of Plaintiff's sex, and the Defendant's discriminatory animus, Defendant, through its employees, took actions against Plaintiff, including, but not limited to:

    a. Interfering with the terms and conditions of Plaintiff's employment;

    b. Downgrading or disparaging Plaintiff's performance;

    c. Subjecting Plaintiff to heighted scrutiny;

    d. Terminating Plaintiff.

57. Defendant treated male employees more favorably.

58. The Defendant's stated reason for its conduct is pretext for unlawful discrimination.

59. Defendant's conduct was a knowing and willful violation of Plaintiff's rights.

60. As a proximate result of the acts and omissions on the part of Defendant, Plaintiff has suffered damage to her career, physical, psychological, and emotional injury, compensable damages, and other substantial and irreparable injury.

WHEREFORE, Plaintiff prays for relief and damages including the following:

    a. Trial by jury on the allegations raised in this complaint and reasonably related to information provided to the EEOC;

    b. That a declaratory judgment be issued that Plaintiff's rights have been violated as alleged above and that the practices complained of herein are unlawful and violative of the Acts cited;

    c. That this Court permanently enjoin Defendant, its agents, successors, officers, employees, and those acting in concert with them, from engaging in each of the

          unlawful practices, polices, customs and usages set forth herein, and from continuing all other practices shown to be in violation of applicable law;

    d.    That Plaintiff recover from Defendant compensatory damages for emotional pain, suffering, physical injury, inconvenience, mental anguish and other non-wage losses and any other damages, including punitive, to which Plaintiff may be entitled under other applicable laws, rules, or regulations;

    e.    That Plaintiff be awarded the costs and disbursements of this action, including reasonable attorney's fees, pursuant to the Civil Rights Attorneys Fee Award Act of 1975, 42 U.S.C. §1988 and any other fee-shifting statutes; and

    f.    Such other and further relief as this Court deems just or appropriate under the circumstances.

## COUNT II
*(Discrimination in violation of Title VII)*

61.    Plaintiff re-alleges and re-asserts the allegations contained in preceding paragraphs as if fully set forth herein.

62.    Plaintiff is African American.

63.    The Defendant is aware of Plaintiff's race.

64.    Because of Plaintiff's race, and the Defendant's discriminatory animus, Defendant, through its employees, took actions against Plaintiff, including, but not limited to:

    a.    Interfering with the terms and conditions of Plaintiff's employment;

    b.    Downgrading or disparaging Plaintiff's performance;

    c.    Subjecting Plaintiff to heighted scrutiny;

    d.    Terminating Plaintiff.

65. The Defendant's treated non-African American employees more favorably.

66. The Defendant's stated reason for its conduct is pretext for unlawful discrimination.

67. As a proximate result of the acts and omissions on the part of Defendant, Plaintiff has suffered damage to her career, physical, psychological, and emotional injury, compensable damages, and other substantial and irreparable injury.

WHEREFORE, Plaintiff prays for relief and damages including the following:

a. Trial by jury on the allegations raised in this complaint and reasonably related to information provided to the EEOC;

b. That a declaratory judgment be issued that Plaintiff's rights have been violated as alleged above and that the practices complained of herein are unlawful and violative of the Acts cited;

c. That this Court permanently enjoin Defendant, its agents, successors, officers, employees, and those acting in concert with them, from engaging in each of the unlawful practices, polices, customs and usages set forth herein, and from continuing all other practices shown to be in violation of applicable law;

d. That Plaintiff recover from Defendant compensatory damages for emotional pain, suffering, physical injury, inconvenience, mental anguish and other non-wage losses and any other damages, including punitive, to which Plaintiff may be entitled under other applicable laws, rules, or regulations;

e. That Plaintiff be awarded the costs and disbursements of this action, including reasonable attorney's fees, pursuant to the Civil Rights Attorneys Fee Award Act of 1975, 42 U.S.C. §1988 and any other fee-shifting statutes; and

  f.  Such other and further relief as this Court deems just or appropriate under the circumstances.

            Respectfully submitted,
            **AQUANDA BROOKS,**

      BY: /s/ Justin G. Randolph
          Justin G. Randolph
          One of Plaintiff's Attorneys